IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS E. WOLF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-3139-CV-S-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

While Plaintiff's alleged onset date is August 25, 2008, a brief discussion of his prior medical history is warranted. He underwent two prior back surgeries, one in 2000 and one in 2002, to address bulging discs. In November 2006, while incarcerated, Plaintiff complained of back pain that he rated as 5 on a 1-10 scale while at rest and 8 or 9 when he was active. R. at 179. At times he was observed to walk without difficulty or apparent pain, but at other times he was observed to have poor posture and a limited range of motion. X-Rays in December 2006 revealed narrowing at L4-5 and L5-S1 and some scoliosis. R. at 184. He was apparently treated with medication, primarily Naproxin and Tylenol.

In April 2008 – by now no longer incarcerated – Plaintiff went to Dr. Jennifer Bridges for treatment. At the first appointment, Plaintiff exhibited a normal gait adn no misalignments or any other problems. Dr. Bridges prescribed Flexeril and Ultram. R. at

07-08. At his next appointment, Dr. Bridges noted tenderness in Plaintiff's lumbosacral region and added prescriptions for Vicodin and Ibuprofin. R. at 210. The tenderness in Plaintiff's back was noted again in June, at which time his prescriptions were refilled and Plaintiff was told to apply hot and cold packs. R. at 211. Plaintiff underwent an x-ray in August. The x-rays revealed narrowing at L3-4, L4-5, and L5-S1, which was attributed to degenerative disc disease. Plaintiff's medication was altered, and in late August Plaintiff underwent an MRI. The MRI confirmed the narrowing noted on the x-rays and also revealed that a protrusion contacted – but was not "significantly deforming [the] right L3 nerve root," no impingement of the L4 nerve root, and no stenosis. R. at 227-28. In September, Dr. Bridges refilled Plaintiff's prescriptions. R. at 218.

At some point, Dr. Bridges referred Plaintiff to Dr. Jay Baker at the pain clinic at Ozarks Community Hospital ("OCH"). Plaintiff first saw Dr. Baker in early October 2008, at which time Plaintiff reported his pain was constant and rated at a 9, worse with activity. Dr. Baker suggested cortisteroid injections, but Plaintiff reported that he had tried them in the past and "did not feel that they were effective" and preferred "long-term narcotic management." Dr. Baker arranged for a psychological evaluation to assess Plaintiff's suitability for such treatment and prescribed Kadian and exercises in the meantime. R. at 234-35. Approximately two weeks later, Plaintiff told Dr. Baker that his pain was a 5 made "worse by standing and sitting" and that he was realizing "from 50% to 70% relief with his oral medications." Dr. Baker increased Plaintiff's dosage of Kadian. R. at 233. In November, Plaintiff saw a nurse practitioner at OCH and told her that is pain was then at an 8, but that was achieving "90% relief with his current medication regimen." R. at 267. He made a similar statement to Dr. Baker in December. R. at 266.

Plaintiff did not return for medical treatment again until May 26, 2009, at which time he explained to Dr. Bridges that he "ha[d] been out of town for the past 5 mo and is having a lot of pain." Dr. Bridges referred Plaintiff back to OCH. R. at 250. Plaintiff returned to Dr. Baker on June 15, reporting "he had to go out of town to take care of some business and . . . just recently returned." He told Dr. Baker that "when he took his Kadian he had good relief [and] [h]is overall pain rating today is a 7." Dr. Baker re-

2

prescribed Kadian. R. at 265. In July, Plaintiff again reported that Kadian provided "90% relief" but that he experienced discomfort in the middle of the day; Dr. Baker added a prescription for morphine "to see if that will tide him over." R. at 264. Plaintiff reported minimal relief from the morphine durinv visits to OCH in August and September, and in September his prescription of Kadian was increased. R. at 262-63. In October, Plaintiff told Dr. Baker he was experiencing numbness and tingling in his toe; injections were recommended again, but Plaintiff rejected the suggestion even though he was told "there is not a lot we are going to be able to do about numbness and tingling with just oral medication." R. at 261. In November, Plaintiff's Kadian was discontinued and the dosage of morphine was increased. R. at 260. The dosage was altered again in December and maintained in January. R. at 257-59.

On February 16, 2010, Dr. Bridges completed a Medical Source Statement ("MSS") indicating Plaintiff could frequently lift five pounds and occasionally lift twenty pounds, stand or walk a total of two hours a day and twenty to thirty minutes at a time, sit for two hours a day and thirty to forty-five minutes at a time, and needed to avoid climbing, balancing, stooping, crouching, crawling, vibrations, and extremes of heat or cold. She also indicated Plaintiff would need rest periods every thirty to sixty minutes lasting fifteen to twenty minutes. R. at 269-71.

Plaintiff was born in May 1962, earned his GED, and has prior work experience as a stock clerk, poultry worker, inspector, and packager. During the hearing, he testified that he has applied for jobs since August 2008, but has not gotten any job offers and does not think he could work anyhow. R. at 26-27. He described side effects from his medication, including sleepiness and slurred speech – but admitted that he had never told his doctors about them. R. at 27. He described his pain as a sharp, stabbing sensation in his waist area that would sometimes extend into his legs to his knee. The pain is sometimes accompanied by cramps or spasms. R. at 27-28. Medication does not completely alleviate his pain. R. at 28-29. Plaintiff testified that he could stand for fifteen minutes at time, sit for fifteen minutes at a time, and walk approximately one block, and needed to lie down and rest for two hours per day. He described his daily activities as consisting of waking up, making coffee, and waking his daughter (who was

under three years old at the time) and taking care of her throughout the day. R. at 32-33, 127-28. In documents filed as part of the administrative process, Plaintiff indicated he also drove his wife "when needed." R. at 127. He also indicated that he cooked daily, did the laundry, washed dishes, and leaves the house "4 or 5 times a day." R. at 129-30.

The ALJ did not accord controlling weight to Dr. Bridges' MSS. He explained that while she had a

> treating relationship with the claimant . . . her medical source statement consists mainly of checked boxes with little explanations as to the reasoning behind her assessment. Further, her assessment is not supported by her treating notes or the medical evidence of record. Although she saw the claimant numerous times, her examination notes do not reflect the degree of incapacity she attributed to the claimant in her medical source statement.

R. at 15. The ALJ also recognized that Plaintiff suffers from a severe medical condition that can be expected to cause pain, and identified the critical issue as the amount of pain Plaintiff suffers and the effect of that pain on Plaintiff's residual functional capacity. R. at 13. In this regard the ALJ did not find Plaintiff's testimony to be credible for a variety of reasons, including the lack of medical support for the severity of pain he described, inconsistencies with his daily activities, the nature of medical treatment prescribed, the five month gap in Plaintiff's treatment, and Plaintiff's work history. R. at 13-14.

The ALJ determined Plaintiff retained the residual functional capacity to sit six to eight hours a day, stand two hours a day, lift five pounds frequently and ten pounds occasionally. He also found that Plaintiff required the option to sit or stand at will, and that Plaintiff suffered from other limitations that need not be detailed here. Based on these findings, the ALJ determined Plaintiff could not return to his past work. After eliciting testimony from a vocational expert, the ALJ concluded Plaintiff could find work as an assembler or a table worker.

4

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A. Failure to Defer to Dr. Bridges' MSS

Plaintiff contends the ALJ erred in not deferring to Dr. Bridges' assessment as expressed in the MSS. Generally speaking, a treating physician's opinion is entitled to deference. However, the Record does not contain substantial evidence suggesting Dr. Bridges was entitled to such deference. "The treating physician rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians." Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991) (citation omitted). Dr. Bridges saw Plaintiff for back problems approximately once a month between April and September 2008 before referring him to a different doctor. She saw Plaintiff again in May 2009, and essentially referred Plaintiff back to Dr. Baker. This does not appear to be the sort of relationship that justifies deference. Plaintiff attempts to augment Dr. Bridges' involvement by pointing out that she was provided copies of Dr. Baker's reports – but this only furthers

the conclusion that it was Dr. Baker, not Dr. Bridges, who was treating Plaintiff for back-related issues.

Even if Dr. Bridges is properly considered a treating physician, the ALJ was justified in not deferring to her MSS. Deference is not automatically required; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). Here, it is true that Plaintiff underwent to prior back surgeries, and that x-rays and an MRI confirmed disc-space narrowing, but none of the objective medical findings confirmed a condition that would be expected to cause the *degree* of pain Plaintiff reported. Continuing the efforts to bootstrap Dr. Baker's treatments into Dr. Bridges' MSS, Plaintiff points out that Dr. Baker eventually prescribed narcotic pain medication. However, it is also true that (1) he first – on two separate occasions – suggested cortisteroid injections precisely because oral medication would not be effective, (2) no further surgery was recommended, and (3) Plaintiff consistently reported achieving a high degree of relief from his medications. Thus, Dr. Baker's reports do not provide the necessary support to require deference to Dr. Bridges' MSS. The ALJ's determination was supported by substantial evidence in the Record as a whole.

## B. ALJ's Factual Findings

Plaintiff has parsed various of the ALJ's statements, alleging each isolated finding to be unsupported or insufficient its their own to justify the denial of benefits. The Court prefers to address these issues collectively because they are interrelated and doing so is more consistent with the obligation to evaluate the Record as a whole.

The first issue involves the ALJ's determination that Plaintiff's testimony was not fully credible. As the ALJ noted – and is often the case – the critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that he experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a

6

Case 6:11-cv-03139-ODS   Document 13   Filed 04/30/12   Page 6 of 9

claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. Again, looking collectively at the evidence in the Record and the ALJ's decision, there is substantial competent evidence to support the ALJ's finding that Plaintiff's subjective complaints were not fully credible. Plaintiff went more than five months without receiving treatment; this undercuts his claim of debilitating and constant pain. Dr. Baker suggested cortisteroid injections because they could provide relief that oral medications could not, but Plaintiff refused. The failure to follow a physician's advice is inconsistent with complaints of disabling pain. E.g., Choate v. Barnhart, 457

7

F.3d 865, 872 (8th Cir. 2006). Plaintiff had a poor earning record, suggesting a diminished motivation to work. Plaintiff's statements to doctors about the efficacy of medication were inconsistent with his claims of debilitating pain, and his failure to tell doctors about the side-effects of medication undercuts his credibility on that issue. Plaintiff's daily activities are also inconsistent with his testimony; the ALJ was entitled to find that Plaintiff's testimony about pain and the corresponding effects was inconsistent with his testimony that, on a daily basis, he was solely responsible for caring for an infant/toddler.

It may be that any one of these factors, alone, would be insufficient to justify the ALJ's findings. In concert, however, they serve as substantial evidence supporting the ALJ's decision, and there is no basis for second-guessing the ALJ's factual determinations.

The second finding Plaintiff challenges is the determination of his residual functional capacity ("RFC"). In large measure, his arguments replicate those with respect to Dr. Bridges' MSS, and for the reasons previously stated those arguments are rejected. Plaintiff also contends the ALJ improperly relied on a non-examining, consulting physician's opinion (Dr. Van Kinsey) to ascertain the RFC. This was improper, according to Plaintiff, because the RFC is a medical determination and Dr. Kinsey cannot offer a medical opinion without having examined Plaintiff. Plaintiff's characterization is not complete: while "a claimant's RFC is a medical question, . . . in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). It is simply not true that the RFC can be proved *only* with medical evidence. Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). Evidence of Plaintiff's actual daily activities and the medical evidence that existed was sufficient to support the ALJ's determination about Plaintiff's capabilities.

8

## III. CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: April 30, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT